UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
————

|  |  |  |
|---|---|---|
| HAROLD C. MIDDLEBROOKS, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 1:07-cv-26 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| MARY BERGHUIS, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |
| _____ | ) | |

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254.  Petitioner is serving a sentence of 25-to-50 years' incarceration for second-degree murder, MICH. COMP. LAWS § 750.317, and a consecutive 2-year term for possession of a firearm during commission of a felony, MICH. COMP. LAWS § 750.227b.  Judge Warfield Moore, Jr. of the Wayne County Circuit Court imposed these sentences on June 22, 2000, after a jury found petitioner guilty of both charges.  Petitioner's conviction was affirmed on direct appeal, and the state courts denied a motion for post-conviction relief.

Petitioner initiated this habeas corpus proceeding by filing a *pro se* petition on January 10, 2007.  The petition alleges that petitioner was deprived of his right to due process of law and right to privacy as guaranteed by the Fourth, Sixth, and Fourteenth Amendments "due to the admission of unlawfully obtained evidence springing from an unlawful arrest and seizure of Mr. Middlebrooks'[s] person."  (Petition ¶ 5, docket # 1).  The accompanying brief, however, sets forth a completely different claim.  Petitioner's brief asserts that he is entitled to a writ of habeas corpus

for violation of his right to the effective assistance of appellate counsel "when his appellate attorney failed to raise significant and obvious issues which would have prevailed on appeal." (Brief at 3, docket # 2). The allegedly meritorious appellate issues were (1) that petitioner's warrantless arrest without probable cause resulted in an illegal detention, rendering petitioner's subsequent statements inadmissible as fruit of the poisonous tree and (2) that officers' warrantless intrusion in petitioner's home to arrest him rendered his subsequent statements inadmissible. Petitioner asserts that his trial counsel raised these issues in a pretrial motion but that appellate counsel was ineffective for failing to raise the issues on appeal.

Judge Robert Holmes Bell has referred this matter to me for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 10 of the Rules Governing Section 2254 Proceedings in the District Courts. After review of the submissions of the parties and the extensive state-court record, I conclude that both of petitioner's habeas corpus claims -- the Fourth Amendment claim in his petition and the Sixth Amendment claim in the accompanying brief -- are meritless and do not warrant habeas corpus relief.

## **Proposed Findings of Fact**

### A.     **Trial Court Proceedings**

The state-court proceedings arose from the May 17, 1997 shooting death of Mark Hentley. The Michigan Court of Appeals succinctly summarized the underlying facts as follows:

> This case stems from the shooting death of a 19-year-old man in a neighborhood field[1] during the early morning hours of May 17, 1997. On May 15, a witness saw defendant and the decedent have a loud and heated argument outside of his workplace, during which defendant said "f____ you" to the decedent. Both parties appeared to be angry. According to defendant's statements to the police, on the day of the incident, he was going to get some marijuana when he saw the

decedent and two other individuals, and the group began fighting.  Defendant stated that, after the fight, he went home, got his mother's boyfriend, who gave him a nine-millimeter gun, and walked to the field.  The decedent's brother and another witness testified at trial that they saw defendant in the area, walking toward the field, carrying a gun.  In his statement to the police, defendant said that, once he reached the field, he hid in the bushes and, when he saw the decedent, he jumped out and shot the decedent three times in the back.  The autopsy revealed that the decedent was shot twice from the back, at the base of the scalp and on the right elbow, with a nine-millimeter gun. Four nine-millimeter shell casings were found near the decedent's body.  The gun used to kill the decedent was not located, but defendant identified the type of gun used in the murder from police photographs.  Ultimately, defendant was tried for first-degree premeditated murder as a result of the decedent's death.

_____

[1] The record refers to the location of the incident in some instances as a "field" and in other instances as an "alley."  For purposes of this opinion, we will refer to this area only as a "field."

(Michigan Court of Appeals Opinion at 1, found in appellate record, docket # 44).

Detroit homicide detectives suspected petitioner's complicity in the murder at an early stage in their investigation.  On May 21, 1997, they questioned petitioner, who said that he did not know Hentley and had nothing to do with the crime.  Subsequent investigation located witnesses who had seen petitioner arguing with Hentley two days before and other witnesses who had seen him with a gun.  Ultimately, detectives concluded that they had probable cause to arrest petitioner for the murder.  He was arrested at the home at 656 Phillip Street in the City of Detroit on July 7, 1997.  While in custody after the arrest, and after having waived his *Miranda* rights, petitioner gave three statements to officers admitting that he shot Hentley three times.

Pretrial proceedings in this case were prolonged and extensive.  They included a referral for a competency evaluation, a forensic referral for evaluation of a diminished capacity

defense, and the filing of several motions.[1]   One defense motion was to suppress petitioner's statements to police as involuntary.  The court conducted an extensive evidentiary hearing on the motion on May 28, 1999.  (Tr., docket # 23).  The testimony from officers at the evidentiary hearing indicated that petitioner was advised on numerous occasion of his *Miranda* rights and his right to counsel before giving each statement.  At the end of the hearing, Judge Moore denied the motion, finding that petitioner had been adequately advised of his rights, had given voluntary oral and written statements, and that there were no constitutional infirmities in any of the statements.  (Tr. 74).  The court remarked that the mere fact that petitioner was seventeen years old, standing alone, did not undermine the voluntariness of the statements.  (*Id.*, 74-75).

Trial commenced on April 24, 2000, with the selection of a jury.  During a break in *voir dire* proceedings, the court conducted an evidentiary hearing on petitioner's motion to suppress his statements as the fruit of an illegal arrest.  (Trial Transcript (TT) I at 78-121, docket # 37).  The court received the testimony of Detroit Police Sgt. Vernell Newson, the principal investigator of the homicide, and Lt. Charles Flannigan, the officer who arrested petitioner on July 7, 1997.  Sgt. Newson testified concerning the course of his investigation and the evidence that led him to conclude that probable cause supported petitioner's arrest.  Lt. Flannigan, acting pursuant to orders from the Homicide Section, went to 656 Phillip Street in the City of Detroit on July 7, 1997, to place petitioner under arrest.  (TT I, 99-100).  He testified that he knocked on the front door, and was admitted by a person who he believed was the mother of the defendant.  He inquired whether Mr.

---

[1] In addition, the case was stayed pending the outcome of appellate challenges in other cases to the constitutionality, under state separation-of-powers principles, of the "automatic waiver" statute by which petitioner was charged as an adult.  (*See* Motion Tr., docket # 35).  The state Court of Appeals ultimately upheld the statute.  *People v. Conat*, 605 N.W.2d 49 (Mich. Ct. App. 1999).

Middlebrooks was at home, "and she invited us in." (*Id.*, 101). While officers were in the living room, petitioner stepped out from a back bedroom and identified himself. He was then placed under arrest. (*Id.*). Lt. Flannigan testified that he did not forcibly enter the house and that his entry was pursuant to the consent of "an adult female who claimed to be the homeowner." (*Id.*). Petitioner did not resist and was transported to the police station for further proceedings. Lt. Flannigan readily admitted that he did not have a warrant authorizing petitioner's arrest. (*Id.*, 103-04). Petitioner did not testify, and his counsel called no witness to contradict Officer Flannigan's testimony that he entered the home pursuant to the homeowner's consent.

Defense counsel presented argument based on the Michigan Supreme Court's decision in *People v. Oliver*, 338 N.W.2d 167 (Mich. 1983). The *Oliver* decision was an application of the Supreme Court's ruling in *Payton v. New York*, 445 U.S. 573 (1980), in which the Court held that the Fourth Amendment requires a warrant (or exigent circumstances) as a prerequisite to officers' entry into a defendant's home before arresting him. "Second, before entering a suspect's residence to effect his arrest, the police must possess an arrest warrant absent exigent circumstances." *Oliver*, 338 N.W.2d at 172 (citing *Payton*, 445 U.S. at 602-03). Defense counsel conceded the existence of probable cause: "Your Honor, I think the record has been clear that Investigator Newson testified that he had probable cause to arrest in this case. . . . Your Honor, those facts apply to *People v. Oliver*, which is 417 Mich. 366, 1983 case. [I]f there is probable cause to arrest a person, the police know where the person can be found, have ample time to procure a warrant and do not do so, and that to [sic] arrest is inadmissible, Your Honor." (TT II, 107). "They had probable cause to arrest him and failed to get the warrant, Your Honor." (*Id.*, 108). Counsel's only contention was that the warrantless entry into the house violated the Fourth Amendment and

led to petitioner's subsequent statements.  The court engaged defense counsel in a long colloquy, in which the court pointed out that a warrantless arrest is proper, so long as officers have probable cause, and that entry into a home to make the arrest is not unconstitutional if officers have consent. (*Id.*, 109-18).  At the end of the argument, the court indicated that it would read the cases cited by counsel and make a ruling the next day.  (*Id.*, 121).  Jury selection then continued.

Judge Moore made an oral ruling on the motion to suppress at the commencement of proceedings on the second day of trial.  (TT II, docket # 38).  After analyzing the *Oliver* case at length, the court found that it did not apply, because "it is uncontested by the testimony that the police were admitted into the house voluntarily by someone who was present in that house and was identified as the aunt or mother."  (TT II, 7).  The motion to suppress was therefore denied.

The trial consumed five days in late April and early May, 2000.  The prosecution called witnesses who established the facts summarized by the Court of Appeals in the passage set forth at the beginning of the Proposed Findings of Fact herein.  Principal to the prosecution's case were the statements given to police by petitioner after his arrest.  Detroit Police Investigator Andrew Sims testified that on July 8, 1997, he interviewed petitioner, after both reading him his rights and carefully reviewing a rights form, which petitioner initialed and signed.  (TT IV, 73-74, 89, docket # 40).  During the course of the oral interview, petitioner told Sims that he fired several shots at Mark Hentley and Hentley's friend as they were walking in a field and that afterwards he ran home and gave the nine-millimeter gun to his mother's boyfriend, Walter Jackson, who had provided petitioner the gun in the first place.  (*Id.*, 79).  Sims then gave petitioner a pencil and paper for purposes of writing out his statement and left him alone in the room to do so.  (*Id.*, 79-80).  The statement was introduced at trial as People's Exhibit No. 29 and read into the record.

-6-

Q       I'd like you to read into the record, if you would, the original of what you have in your hand, 29 verbatim as it appears in the statement that Mr. Middlebrooks said.

A.      It says, "Harold Middlebrooks statement 7/8/97, 3:26 p.m. I was going to get some weed. And as I was going, I ran into Pimp and two more people and got into a little fight with Pimp and two other people. And then I ran home and got my mother's boyfriend.

              We walked back to the house. And he went to the ally [sic], I went to the field. I saw Pimp getting out of a truck. I shot three times in the back, home and went, shot three times and ran back home and went -- I got and when I got home, he said don't worry about it no more."

              Then he has on here "that is the truth for real. Harold Middlebrooks." He signed his signature, 7/8/97, 3:35 p.m.

(TT IV, 90-91).

        Sgt. Ernest Wilson interviewed petitioner on the next day, July 9, 1997. Wilson advised petitioner of his constitutional rights orally and had him sign and initial and advice-of-rights statement. (TT IV, 115-20). He then took a statement from petitioner, identified as People's Exhibit 32, which was set forth in question and answer form. In this statement, petitioner again admitted that he saw the victim walking in a field, that he jumped out of the bushes and began to fire, shooting three times from a distance of five or six feet. (TT IV, 132-35). Petitioner signed his name at the bottom of all three pages of the statement. (*Id.*, 135). Afterwards, petitioner described the gun to Investigator Sims and identified the gun model from a book of pictures of guns (People's Exhibit No. 33). (*Id.*, 135-37).

        Defense counsel called Elizabeth Middlebrooks, petitioner's mother, Detroit Police Officer Prentiss Mercer, and Mario Hentley, brother of the deceased. Petitioner's mother testified concerning the arrest of her son on July 7, 1997. (TT IV, 185-89). Officer Mercer testified that a

suspect named James Hall was arrested for the same murder but was ultimately released and not prosecuted.  Hall's statement to police was admitted as Defense Exhibit A.  (TT V, 41-60, docket # 41).  Hentley, who had testified in the prosecutor's case, was asked if he knew someone by the name of "Pimp."  He testified that this name referred to Alexander Collins.  (*Id.*, 63-64).  The apparent purpose of this testimony was to show that petitioner was not referring to the decedent, Mark Hentley, in his written confession to police.

After both sides rested and counsel delivered their final arguments, the case was sent to the jury on instructions for first-degree, premeditated murder, second-degree murder, and possession of a firearm during commission of a felony.  (TT V, 127-63).  Both the prosecutor and defense counsel pronounced themselves satisfied with the instructions as given.  (*Id.*, 164).  The jury found petitioner guilty of the lesser-included offense of second-degree murder, as well as the felony-firearm charge.  (TT VI, 12, docket # 42).

The parties appeared before Judge Moore on June 22, 2000, for sentencing.  (Sentencing Transcript (ST), docket # 43).[2]  After allocution, the court sentenced petitioner to a mandatory 2-year period of incarceration on the felony-firearm conviction, followed by a sentence of 25-to-50 years on the second-degree murder conviction, with credit for time served.  (*Id.*, 22-23).

**B.     Direct Review**

Petitioner appealed as of right to the Michigan Court of Appeals.  His appellate brief, filed by Assistant Appellate Defender Debra A. Gutierrez-McGuire, raised four claims:   (I)

---

[2] The caption of the sentencing transcript indicates that the proceedings took place before Judge Bruce U. Morrow.  This is apparently a mistake, as the body of the transcript clearly demonstrates that sentencing was performed by the same judge who presided at trial.

-8-

insufficiency of the evidence to show beyond a reasonable doubt that petitioner killed Mark Hentley; (II) trial court error in failing to suppress petitioner's statements to police as involuntary; (III) trial court error in refusing to exclude evidence that petitioner carried a gun and refusal to grant mistrial on this basis; (IV) trial court error in failing to instruct on the lesser offenses of voluntary manslaughter and reckless discharge of a firearm. (Appellant's Brief on appeal, found in Court of Appeals record, docket # 44).

On December 3, 2002, the Michigan Court of Appeals issued an unpublished, *per curiam* opinion rejecting all appellate claims. With regard to the sufficiency of the evidence, the court applied the federal standard, pursuant to which the evidence is viewed in the light most favorable to the prosecution and a determination made whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. The court referred to testimony concerning a heated argument between petitioner and the decedent, a previous fight between petitioner and two of decedent's friends, the testimony that petitioner was seen in the area carrying a gun, and his incriminating statements to the police. The court rejected the concept that inconsistency in witnesses' testimony undermined the verdict, remarking that the issue was one of credibility for the trier of fact. (Opinion at 2-3, found in appellate record, docket # 44). The court affirmed the trial judge's decision that the custodial statement made by petitioner to the polygraph examiner was knowing and voluntary and was made after he waived his Fifth Amendment rights. Furthermore, even if the statement given to the polygraph examiner was somehow tainted, that taint did not extend to the other two statements. (Op., 3-5). The court found no error in admission of the testimony concerning petitioner's carrying of a gun, finding that evidence of a defendant's possession of a weapon of the kind used in the offense is relevant to establishing that he committed

-9-

the crime.  (Op., 5-7).  Finally, the court found that state law did not entitle petitioner to instructions on voluntary manslaughter or killing by negligent discharge of a firearm, because the issue had not been preserved by an objection to the instructions and neither instruction would have been proper in any event.  (Op., 7-8).

The state Appellate Defender filed a delayed application for leave to appeal to the state Supreme Court on January 22, 2003, raising the same four claims rejected by the state Court of Appeals.  By standard order entered May 30, 2003, the Michigan Supreme Court denied leave to appeal "because we are not persuaded that the questions presented should be reviewed by this court." (*See* Supreme Court record, docket # 45).

### C.    Post-Judgment Proceedings

Petitioner filed a *pro se* motion for post-conviction relief pursuant to Mich. Ct. R. 6.500-.509.  The motion alleged ineffective assistance of appellate counsel for failure to appeal the trial court's denial of his motion to suppress his statements as fruits of an illegal seizure, that the delay in bringing him to trial violated his right to a speedy trial under the state and federal Constitutions, and that officers' warrantless arrest of petitioner without probable cause violated his Fourth Amendment rights.  On June 1, 2004, Judge Warfield Moore, Jr. issued an opinion, finding that the Fourth Amendment and speedy trial claims were foreclosed by petitioner's failure to raise them on direct appeal or to show cause and prejudice for this procedural default, as required by Mich. Ct. R. 6.508(D)(3).  With regard to the claim of ineffective assistance of appellate counsel, the court found that petitioner's allegations were insufficient on their face and failed to show that appellate counsel's performance fell below an objective standard of reasonableness.  (Opinion and

Order of 6/1/04, found in Michigan Supreme Court record, docket # 47). By order entered January 23, 2006, the state Court of Appeals denied leave to appeal, finding that petitioner had "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." (1/23/06 Order, docket # 46). The state Supreme Court denied leave to appeal on August 29, 2006, on the same basis. (8/29/06 Order, found in Michigan Supreme Court record, docket # 47).

This habeas corpus action followed. As noted above, the petition raises a substantive Fourth Amendment claim, challenging the admission of petitioner's statements, which allegedly sprang from his unlawful arrest. (Petition, ¶ 5). Petitioner's brief raises a completely different claim, challenging the constitutional effectiveness of appellate counsel because of her failure to appeal Judge Moore's denial of the motion to suppress petitioner's statements as fruits of his illegal arrest.

## Applicable Standard

Because petitioner filed his habeas application long after the April 1996 enactment of the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA"), the provisions of that law govern the scope of the court's review. *See Penry v. Johnson*, 532 U.S. 782, 791 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir. 2008). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted); *see Wilkins v. Timmerman-Cooper*, 512 F.3d 768, 774 (6th Cir. 2008). "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). If a state court adjudicated the claim, deferential AEDPA

standards must be applied.  28 U.S.C. § 2254(d); *see Waddington v. Sarausad*, 129 S. Ct. 823, 831 (2009).  *De novo* review is restricted to instances where the state court did not address the merits of a claim.  In that limited set of circumstances,  "there are simply no results, let alone reasoning, to which [the habeas] court can defer." *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003); *see also Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *Van v. Jones*, 475 F.3d 292, 293 (6th Cir. 2007); *Maples v. Stegall*, 427 F.3d 1020, 1025 (6th Cir. 2005).

The AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  Section 2254(d) states that an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  "Section 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning.  A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than the [Supreme Court] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. at 694 (citations omitted).  A federal court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions, but unreasonably applies it to the facts of the particular case, or if the state court unreasonably extends a legal principle from Supreme Court

precedent to a new context where it should not apply or unreasonably refuses to extend that principle

to a new context where it should apply. *Williams v. Taylor*, 529 U.S. 362, 407 (2000); *see Lancaster*

*v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

"It is important to note, however, that 'an *unreasonable* application of federal law is

different from an *incorrect* or *erroneous* application of federal law.'" *Harbison v. Bell*, 408 F.3d 823,

829 (6th Cir. 2005) (quoting *Williams*, 529 U.S. at 409); *Waddington*, 129 S. Ct. at 831; *Fleming v.*

*Metrish*, 556 F.3d 520, 525 (6th Cir. 2009). A federal habeas court may not find a state adjudication

to be "unreasonable" "simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or incorrectly."

*Williams*, 529 U.S. at 411; *see Walls v. Kontech*, 490 F.3d 432, 436 (6th Cir. 2007). Rather, the issue

is whether the state court's application of clearly established federal law is "objectively

unreasonable." *Williams*, 529 U.S. at 410; *see Bell v. Cone*, 535 U.S. at 694; *Keith v. Mitchell*, 455

F.3d 662, 669 (6th Cir. 2006) ("The proper inquiry under the 'unreasonable application' analysis is

whether the state court decision was objectively unreasonable and not simply erroneous or

incorrect."), *cert. denied*, 549 U.S. 1308 (2007); *Payne v. Bell*, 418 F.3d 644, 653 (6th Cir. 2005)

("A state court decision involves an 'unreasonable application' of clearly established Supreme Court

precedent when it correctly identifies the governing legal standard but applies it to the facts before

it in an objectively unreasonable manner.") (citations omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme

Court. 28 U.S.C. § 2254(d). This court may consider only the "clearly established" holdings, and

not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. at 412; *Wilson v. Parker*, 515 F.3d

at 691; *Ross v. Petro*, 515 F.3d 653, 660 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 906 (2009). This

court may not consider decisions of lower federal courts in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *See Williams*, 529 U.S. at 381 ("If this Court has not broken sufficient legal ground to establish an asked for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar."); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).

The AEDPA standard includes an important temporal limitation. "'[C]learly established Federal law as determined by the Supreme Court of the United States,' refers to 'the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Dennis v. Mitchell*, 354 F.3d 511, 517 (6th Cir. 2003) (quoting *Williams*, 529 U.S. at 412); *see Fautenberry v. Mitchell*, 515 F.3d 614, 623 (6th Cir.), *cert. denied*, 129 S. Ct. 412 (2008). Thus, the inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001); *see Miller v. Webb*, 385 F.3d 666, 672 (6th Cir. 2004) (describing the issue of whether the law was clearly established by Supreme Court precedent as a "threshold inquiry"). "'Federal Courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation.'" *Payne*, 418 F.3d at 656 (quoting *Cone v. Bell*, 543 U.S. at 455). "The state court decision need not cite Supreme Court precedent, or even reflect awareness of Supreme Court cases, 'so long as neither the reasoning nor the result of the state court decision contradicts them.'" *Dennis*, 354 F.3d at 517-18 (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)).

Regardless of the subsection of 2254(d) relied on by the petitioner, AEDPA requires heightened respect for state factual findings. 28 U.S.C. § 2254(e)(1); *see Herbert v. Billy*, 160 F.3d

1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to

be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing

evidence 28 U.S.C. § 2254(e)(1); *Owens v. Guida*, 549 F.3d 399, 404 (6th Cir. 2008); *Ivory v.

Jackson*, 509 F.3d 284, 291 (6th Cir. 2007), *cert. denied*, 128 S. Ct. 1897 (2008). This presumption

of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner

v. Mata*, 449 U.S. 539, 546 (1981); *Tucker v. Palmer*, 541 F.3d 652, 665 (6th Cir. 2008).

## Discussion

### I.   Fourth Amendment Claim

The habeas corpus petition alleges that petitioner's federal constitutional rights were

abridged "due to the admission of unlawfully obtained evidence springing from an unlawful arrest

and seizure of Mr. Middlebrooks's person." (Petition, ¶ 5). Although petitioner's brief does not

mention this claim, presumably petitioner is seeking to raise the same issue advanced in post-

conviction proceedings. As shown by petitioner's appellate briefs in those proceedings (*see* Supreme

Court record, docket # 47), petitioner's argument was based on the assertions that his warrantless

arrest was not supported by probable cause and that officers' nonconsensual entry into petitioner's

home without a warrant constituted a separate Fourth Amendment violation.

In response to petitioner's Fourth Amendment claim, the State of Michigan raises the

doctrine of *Stone v. Powell*, 428 U.S. 465 (1976). In that case, the Supreme Court held that federal

habeas review is not available to a state prisoner alleging that his conviction rests on evidence

obtained through an unconstitutional search or seizure, as long as the state has given the petitioner

a full and fair opportunity to litigate the Fourth Amendment claim. In order for the rule of *Stone v.

*Powell* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the present case must not have been frustrated by failure of that mechanism. *See Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000); *Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985). If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state-court determination of the claim to have been in error. *Gilbert*, 763 F.2d at 824; *accord Jennings v. Rees*, 800 F.2d 72 (6th Cir. 1986).

In the present case, it is clear beyond doubt that petitioner cannot satisfy either prong of the Sixth Circuit standard. First, it is undisputed that Michigan has a state procedural mechanism which, in the abstract, presents a full opportunity to raise a Fourth Amendment claim before trial. Even before the United States Supreme Court decided that the federal exclusionary rule applied to state criminal proceedings, the Michigan courts applied the exclusionary rule to the fruits of unconstitutional searches and seizures. *See People v. Margelis*, 186 N.W. 488 (Mich. 1922). After *Mapp v. Ohio*, 367 U.S. 643 (1961), the Michigan courts have consistently acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment. *See, e.g., People v. David*, 326 N.W.2d 485, 488 (Mich. App. 1982). Consequently, Michigan affords criminal defendants a vehicle by which to raise Fourth Amendment challenges.

Second, petitioner has not alleged any grounds for concluding that presentation of his Fourth Amendment claim was somehow frustrated because a failure of the state's mechanism. Petitioner raised one of his present Fourth Amendment issues (suppression of statements as fruit of a warrantless intrusion) in the state trial court. The court held an evidentiary hearing, analyzed the evidence, and rejected petitioner's contention under federal principles. Therefore, even if this court

-16-

were to somehow disagree with the determination of the state trial court, that disagreement would be insufficient to satisfy the second prong of the Sixth Circuit standard.  The Sixth Circuit has pointedly held that the doctrine of *Stone v. Powell* applies, even if the federal court deems the state-court determination of the Fourth Amendment claim to have been in "egregious error."  *Gilbert*, 763 F.2d at 824.  Rather, to satisfy the second prong of *Stone v. Powell*, petitioner must allege facts showing that the state corrective mechanism has somehow broken down.  Petitioner has not addressed, let alone carried, this burden.

The only claim set forth in the habeas corpus petition -- a Fourth Amendment claim challenging admission of petitioner's statements as the fruits of an arrest without probable cause and of a warrantless intrusion into his home -- is barred by the doctrine of *Stone v. Powell*.

## II.     Ineffective Assistance of Appellate Counsel

Even though *Stone v. Powell* bars habeas corpus review of substantive Fourth Amendment claims, a petitioner may nevertheless seek relief on the ground that his counsel was constitutionally ineffective for failing to assert a Fourth Amendment claim.  *See Kimmelman v. Morrison*, 477 U.S. 365 (1986).  In the brief accompanying his petition, petitioner argues that the state Appellate Defender was constitutionally ineffective for failing to appeal the trial court's refusal to suppress petitioner's statements as fruits of Fourth Amendment violations.

The right to effective assistance of counsel includes the right to effective assistance of appellate counsel on a first appeal of right.  *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  To prevail on a claim of ineffective assistance of appellate counsel, the petitioner must demonstrate that appellate counsel's performance was deficient and that the deficient performance prejudiced the

appeal. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In the case of appellate counsel, petitioner has no constitutional right to have had every nonfrivolous issue raised on appeal. *Jones v. Barnes*, 463 U.S. 745 (1983). Tactical choices regarding issues on appeal are properly left to the sound judgment of counsel. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998); *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). "'Winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. at 751-52). On the prejudice prong, petitioner must show a reasonable probability that, but for counsel's unprofessional errors, the result of the appeal would have been different. *See Strickland*, 466 U.S. at 694.

Because the state circuit court directly addressed petitioner's claim of ineffective assistance of appellate counsel, its decision is accorded deference under AEDPA. To receive habeas relief, petitioner must demonstrate that the state court's decision was contrary to, or represented an unreasonable application of, *Strickland*. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Johnson v. Bell*, 525 F.3d 466, 487 (6th Cir. 2008). Hence, it is not enough to convince the federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, petitioner must show that the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell*, 535 U.S. at 699. This creates a "high burden" for petitioner, *see Carter v. Mitchell*, 443 F.3d 517, 525 (6th Cir. 2006), which he cannot possibly meet in this case.

Petitioner first argues that his warrantless arrest was not supported by probable cause and that appellate counsel was ineffective for failure to press this issue on appeal. Under clearly

-18-

established holdings of the United States Supreme Court, a warrantless arrest that is not supported by probable cause violates the Fourth Amendment. *See, e.g., Taylor v. Alabama*, 457 U.S. 687 (1982); *Denaway v. New York*, 442 U.S. 200 (1979); *Brown v. Illinois*, 422 U.S. 590 (1975). These cases stand for the proposition that the indirect fruits of such an illegal arrest must be suppressed when they bear a sufficiently close relationship to the underlying illegality. The problem with petitioner's claim that his appellate counsel was ineffective for failure to raise this issue on appeal is that the issue was never raised in the trial court. As is demonstrated in the Proposed Findings of Fact, petitioner's trial counsel never sought to suppress his statements on the ground that officers lacked probable cause to arrest petitioner. To the contrary, counsel repeatedly conceded that officers did have probable cause to arrest petitioner. (TT I, 107-08). In essence, petitioner's habeas claim is based on the false assertion that he challenged the existence of probable cause for arrest in pretrial procedures.

Appellate counsel cannot be faulted for failing to appeal a claim that was never raised in the trial court. When a Michigan defendant asserts for the first time on appeal that evidence should have been suppressed as the fruit of an arrest without probable cause, the issue is unpreserved for appeal and will only be reviewed for plain error. *People v. Lewis*, No. 230887, 2002 WL 31957700, at * 3 (Mich. Ct. App. Dec. 27, 2002) (citing *People v. Carines*, 597 N.W.2d 130, 138 (Mich. 1999)). Assuming that plain error is found, relief is available only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings, independent of defendant's innocence. *People v. Blackston*, 751 N.W.2d 408, 412 n.12 (Mich. 2008) (citing *Carines*, 597 N.W.2d at 138).

Hence, had petitioner's appellate counsel chosen to raise this unpreserved issue on appeal, she would have been faced with the formidable plain error standard. The Michigan appellate courts generally do not consider any error in this regard to be plain, because the failure to raise the issue below deprived the prosecutor of an opportunity to make an appropriate showing:

> As an initial matter we note that there is no basis her for finding plain error with regard to the validity of defendant's arrest because, due to defendant's failure to timely raise this issue below, the police may have had information that supported the existence of probable cause to arrest defendant that was never made part of the record. For example, hearsay evidence that is inadmissible at trial might nevertheless properly form part of the basis for probable cause to make an arrest.

*People v. Mack*, No. 245057, 2004 WL 959998, at * 3 (Mich. Ct. App. May 4, 2004). Moreover, in meeting the Fourth Amendment objection that petitioner *did* raise, the prosecution made a brief showing of probable cause. (TT I, 79-96). The facts adduced, including the recent fight between petitioner and the decedent and the sighting of petitioner with a gun near the scene, would lead a reasonable person to believe that petitioner committed the murder. Finally, as noted above, counsel repeatedly conceded the existence of probable cause in the trial court, a factor which again would inhibit any appellate court from finding plain error. Where the omitted issue was not presented at trial and would therefore be subject to a highly deferential standard of review, appellate counsel cannot be deemed incompetent for failure to assert it. *See Koras v. Robinson*, 123 F. App'x 207, 212-13 (6th Cir. 2005) (appellate counsel not ineffective for failure to assert unpreserved error; rigorous "plain error" standard undermined any reasonable probability that issue might have prevailed on appeal); *see generally Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999).

The only Fourth Amendment claim raised in the trial court was that the officers' intrusion into petitioner's home without a warrant violated the Fourth Amendment. Petitioner's

counsel relied on *People v. Oliver*, 338 N.W.2d 167 (Mich. 1983), which was an application of the Supreme Court's ruling in *Payton v. New York*, 445 U.S. 573 (1980).  In *Payton*, the Supreme Court held that the Fourth Amendment requires a warrant (or exigent circumstances), before entering a suspect's residence to effect his arrest.  445 U.S. at 602-03.  The principal issue in *Oliver* was whether the *Payton* rule applied to a motel room that the suspect was occupying on a temporary basis.  The *Oliver* court held that the Fourth Amendment's protections extend to motel rooms and further held that exigent circumstances did not justify the arrest of Oliver in his motel room without a warrant.  After hearing the evidence, Judge Moore denied the motion to suppress, because unrebutted evidence presented at the suppression hearing showed that officers were admitted to petitioner's home with the consent of an adult occupant.

Petitioner has presented evidence that his appellate counsel was aware of this Fourth Amendment issue and deemed it to be properly preserved for appeal.  (Petitioner's Brief, Ex. E). Petitioner's counsel cannot, however, be deemed constitutionally ineffective for challenging the trial judge's decision on appeal, as any appeal would have been utterly meritless on this issue.  The evidence at the suppression hearing clearly showed, without rebuttal, that Lt. Flannigan entered the home with consent.  As the *Payton* Court itself recognized, officers may enter a home without either a warrant or exigent circumstances, if they have the consent of an occupant.  *Payton*, 445 U.S. at 583.  This is consistent with a long line of Supreme Court authority, which recognizes a valid, warrantless entry of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with the defendant.  *See Illinois v. Rodriguez*, 497 U.S. 177, 183 (1990); *United States v. Matlock*, 415 U.S. 164, 171 (1974). Michigan law is to the same effect.  *See Oliver*, 338 N.W.2d at 173 ("In *Payton*, the Supreme Court

held that *in the absence of consent* or exigent circumstances, the Fourth Amendment prohibits warrantless entries into private homes to make routine felony arrests.") (emphasis added); *People v. Carpenter*, 327 N.W.2d 523, 526 (Mich. Ct. App. 1982) (voluntary consent from adult occupant takes case out of the *Payton* rule).

In addition, even if officers entered the home without a warrant, without consent, and without exigent circumstances, the illegal entry would not be grounds to suppress petitioner's subsequent statements made at the police station. In *New York v. Harris*, 495 U.S. 14 (1990), the police effected a warrantless arrest of the defendant by entering his home without his consent. The Supreme Court remarked that, in light of *Payton*, "arresting Harris in his home without an arrest warrant violated the Fourth Amendment." 495 U.S. at 17. The Court, however, declined to apply the exclusionary rule. The Court held that "where the police have probable cause to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken after an arrest made in the home in violation of *Payton*." *Id.* at 21. The Supreme Court reasoned as follows:

> In light of these principles, we decline to apply the exclusionary rule in this context because the rule in *Payton* was designed to protect the physical integrity of the home; it was not intended to grant criminal suspects, like Harris, protection for statements made outside their premises where the police have probable cause to arrest the suspect for committing a crime. . . . Nothing in the reasoning of that case suggests that an arrest in a home without a warrant but with probable cause somehow renders unlawful continued custody of the suspect once he is removed from the house. There could be no valid claim here that Harris was immune from prosecution because his person was the fruit of an illegal arrest. Nor is there any claim that the warrantless arrest required the police to release Harris or that Harris could not be immediately rearrested if momentarily released. . . . For Fourth Amendment purposes, the legal issue is the same as it would be had the police arrested Harris on his doorstep, illegally entered his home to search for evidence, and later interrogated Harris at the station house.

495 U.S. at 17-18 (citations omitted).

Because the existence of probable cause to arrest petitioner justified his continued custody following his removal from the home, petitioner was in lawful custody at the time of giving his statements at the police station.  Therefore, even if appellate counsel had raised a successful *Payton* violation on appeal, this would have availed petitioner nothing, as the clear holding of *Harris* would have precluded suppression of petitioner's subsequent statements on the basis of a *Payton* violation.  Michigan law is to the same effect.  *See People v. Dowdy*, 536 N.W.2d 794, 797-98 (Mich. Ct. App. 1995) (adopting reasoning of *Harris* for purposes of Michigan constitutional adjudication and declining to suppress custodial confession following warrantless intrusion into defendant's house); *People v. Snider*, 608 N.W.2d 502, 513-14 (Mich. Ct. App. 2000) (same).

In light of the foregoing, petitioner cannot satisfy either the performance or the prejudice prong of *Strickland*.  Where appellate counsel is charged with ineffectiveness for failure to raise a particular claim, "it is difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000).  To overcome the presumption of competence of appellate counsel in these circumstances, a plaintiff must show that the omitted issues were "clearly stronger" than those counsel chose to assert. *Id.*  This requires an assessment of the strengths of the omitted appellate claims. *See Valentine v. United States*, 488 F.3d 325, 338 (6th Cir. 2007).  In the present case, the Fourth Amendment claims that petitioner argues should have been raised on appeal were both futile.  First, appellate counsel cannot be faulted for declining to appeal denial of the suppression motion on the ground that officers lacked probable cause for an arrest, because that claim was never raised in the trial court.  Indeed, trial counsel expressly conceded the existence of probable cause.  Appellate counsel would have therefore been required to meet the rigorous "plain

-23-

error" standard, which requires a showing of either actual innocence or a serious effect on the integrity of the trial, an impossible burden in this case. The claim that was raised in the trial court -- warrantless intrusion into petitioner's home for purposes of an arrest, in violation of *Payton* -- was clearly meritless. The uncontroverted evidence showed that Lt. Flannigan had consent to enter the home, so *Payton* was plainly inapplicable. Furthermore, even if there were a *Payton* violation, the Supreme Court's decision in *Harris* (as well as analogous Michigan Court of Appeals authority) doomed any effort to suppress petitioner's subsequent statements on the ground of a *Payton* violation. An appellate attorney does not act unreasonably in refusing to raise issues that lack merit. *See Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003).

Likewise, petitioner was not prejudiced by counsel's refusal to raise these claims on appeal. A petitioner meets the prejudice prong of *Strickland* by showing a reasonable probability that, had the omitted claims been raised, they would have prevailed on appeal. *See Valentine*, 488 F.3d at 338. For the reasons discussed above, the Fourth Amendment claims that petitioner now advances had no prospect of success on appeal.

For these reasons, the decision of the Michigan circuit court rejecting petitioner's claim of ineffective assistance of appellate counsel was not an unreasonable application of the *Strickland* standard.

**Recommended Disposition**

Neither the Fourth Amendment claim set forth in the petition nor the claim of ineffective assistance of appellate counsel set forth in the accompanying brief is meritorious.  I therefore recommend that the habeas corpus petition be denied.


Dated:   April 14, 2009                     /s/  Joseph G. Scoville_____
                                            United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).